Joe J. McINTYRE, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 2, 1996.
Decided Jan. 6, 1997.

Timothy Paul Dawson, Adamsburg, for petitioner.

Randall S. Brandes, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Before FRIEDMAN and KELLEY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Joe J. McIntyre (Claimant) appeals from a decision and order of the Unemployment Compensation Board of Review (Board) which reversed the referee's decision and order granting Claimant unemployment compensation benefits.

The facts, as found by the Board, are as follows:

1. Claimant was last employed as a truck driver by Tri–Valley Waste from July 2, 1989 at a final rate of $9.28 per hour and his last day of work was September 7, 1995.

2. The employer has a drug and alcohol-free workplace policy, of which the claimant was aware of (sic) should have been aware, and that policy provides for random testing of employees which included the claimant.

3. Drug test was also done pursuant to employer's understanding of State and Federal Law requirements.

4. On August 29, 1995, the claimant was subjected to random drug testing by the employer.

5. The employer was subsequently notified by the drug testing facility that the claimant had allegedly tested positive for the use of cocaine.

6. Claimant was informed that he had failed his drug test which indicated he had used cocaine.

7. Claimant did not deny the allegation. Claimant went home to discuss the matter with his wife.

8. Claimant had previously failed a drug test and been through rehabilitation.

9. Employer's policy, of which claimant was aware, calls for the discharge of employees who fail a drug test after being reinstated to work following drug rehabilitation.

... [1]

11. Claimant had 72 hours to have the same urine sample tested again at his expense.

12. Claimant chose not to retest the same sample, but to go to his family doctor with a different urine sample and have it tested.

13. On September 7, 1995, claimant was discharged for failing a drug test and completing rehabilitation.

(Board's decision, pp. 1–2).

Following his discharge, Claimant applied for benefits with the Central Westmoreland Job Center, which, on October 6, 1995, denied benefits on the basis of Claimant's willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law).[2] Claimant appealed, and following a hearing before the referee, benefits were awarded to Claimant on November 14, 1995. Employer appealed, and the Board, on January 31, 1996, reversed the referee, holding that Claimant committed disqualifying willful misconduct.

■ On appeal here,[3] Claimant argues that the Board's findings of fact, numbers 5, 6, and 8, set forth hereinabove, were not supported by substantial evidence. We disagree and affirm the Board.

■ Initially, we note that willful misconduct has not been defined under the Law; however, it has been judicially interpreted to mean an act of wanton or willful disregard of the employer's interests, a deliberate violation of employer's work rules, a disregard of the standard of behavior which an employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employ-

---

1. We note that finding of fact 10 is identical to finding of fact 8.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e), which provides:
   An employe shall be ineligible for compensation for any week—
   (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act.

3. Our scope of review is limited to a determination of whether there has been a violation of constitutional rights, errors of law were committed, or whether necessary findings of fact are supported by substantial evidence. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa.Cmwlth.1995).

ee's duties and obligations to the employer. *Knarr v. Unemployment Compensation Board of Review*, 134 Pa.Cmwlth. 613, 579 A.2d 464 (1990). It is the employer's burden to demonstrate a claimant's willful misconduct.

Claimant's discharge here was based upon his positive random drug test result. In support of its burden of demonstrating Claimant's willful misconduct, Employer presented the testimony of Keith Bowser, its Operation's Manager. Bowser testified that Claimant had been subjected to random drug testing on approximately six to seven occasions, and that in February of 1995, he tested positive for drug use. Bowser stated that following his positive drug test, Claimant was suspended from his job until he completed a rehabilitation program, following which, he was reinstated.

Bowser further testified that following his reinstatement to work, Claimant was subjected to random drug testing on three occasions of which the first two showed negative results. Bowser testified that following Claimant's third random test, he received a call from the drug testing facility that conducted the test and was told that Claimant tested positive for cocaine use; he later received the test results in the mail. Bowser confronted Claimant with this information, indicating that he was told Claimant tested positive for cocaine use. Claimant did not deny the assertion, and additionally stated that he too had spoken with the drug testing facility and was told of his positive drug test result. Bowser then told Claimant that pursuant to company policy, he was terminated.

Claimant also testified before the referee. He confirmed that Bowser confronted him on September 7, 1995, and told him that he had received a positive drug test result. Claimant testified that he told Bowser he had not been using cocaine, but had been on cold medication. Claimant further confirmed that he spoke with the lab and was told of his positive drug test results.

■ The Board, in an unemployment compensation proceeding, is the ultimate fact finder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985). Findings made by the Board are conclusive and binding on appeal if the record, when examined as a whole, contains substantial evidence to support those findings. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977).

The Board resolved the foregoing conflict between Bowser's testimony and Claimant's testimony in favor of Employer. Accordingly, the Board held that Claimant's failure to deny Bowser's assertion that he tested positive for drug use, constituted an admission pursuant to our holding in *L. Washington & Associates v. Unemployment Compensation Board of Review*, 662 A.2d 1148 (Pa.Cmwlth. 1995). The Board, therefore, found Claimant to have committed willful misconduct as it was undisputed that Employer's policy provided that employees would be terminated following a second positive test for drugs following a previous positive test and the completion of a rehabilitation program.

■ Here, Bowser's testimony, as well as Claimant's own testimony, supports the Board's finding that Claimant failed to deny that he tested positive for drugs when confronted by Bowser. Moreover, we agree with the Board that Claimant's failure to deny that he tested positive for drugs when confronted by Bowser constituted an admission by silence.

■ The admission by silence principle enunciated in *L. Washington* states that:

[t]he failure of a party to reply to a statement made in his presence or hearing is significant only where the nature of the statement, and the circumstances under which it was made, are such as render a reply natural and proper ... Silence is considered an admission, only when the circumstances are such that one ought to speak and does not....

*L. Washington*, 662 A.2d at 1149–1150.

Under the facts of that case, we held that the following circumstances met the admission by silence requirements:

[C]laimant was confronted by the owner of the company he worked for pursuant to an

investigation into a robbery which occurred at the location where Claimant was working as the posted security officer. He was told by his employer that his investigation into the matter revealed that he, Claimant, had been sleeping on the job.

*L. Washington,* 662 A.2d at 1150. We went on to conclude, in *L. Washington,* that under the foregoing circumstances, if the assertion were untrue, Claimant ought to have voiced a denial.

Here, when Bowser told Claimant of his positive drug test result, it was the first time Claimant was hearing the information from his Employer. Claimant ought to have responded if the assertion was untrue since he knew Bowser was in a position, as Employer's Operation's Manager, to terminate him. As Claimant failed to do so, his silence constituted an admission as concluded by the Board.

Based on the foregoing, we will affirm the Board's order.

### ORDER

AND NOW, this 6th day of January, 1996, the order of the Unemployment Compensation Board of Review dated January 31, 1996 is affirmed.

FRIEDMAN, Judge, dissenting.

Because I do not believe that Joe J. McIntyre's (Claimant) failure to deny that he tested positive for drugs when Keith Bowser confronted him on September 7, 1995 constitutes an "admission by silence" under *L. Washington & Associates v. Unemployment Compensation Board of Review,* 662 A.2d 1148 (Pa.Cmwlth.1995), I respectfully dissent.

1. Bowser testified as follows:
   I told him that he had tested positive. He did not deny it; *he said that he had just talked to the MRO, medical review officer, within a half an hour to an hour before I got to him.* He said he did discuss it with the MRO, and that he—they told ·him he had tested positive for cocaine.
   (N.T. at 9.)

2. The rationale for the "admission by silence" principle is that, under certain circumstances, a person would naturally deny untrue assertions.

In *L. Washington & Associates,* we set forth the following rule, quoting from *Levin v. Van Horn,* 412 Pa. 322, 194 A.2d 419 (1963):

The failure of a party to reply to a statement made in his presence or hearing is significant *only* where the nature of the statement, and the circumstances under which it was made, are such as render a reply natural and proper ... *Silence is considered an admission, only when the circumstances are such that one ought to speak and does not.* ...

*L. Washington & Associates,* 662 A.2d at 1149–50 (emphasis added). In *Levin,* our supreme court also stated:

Nothing can be more dangerous than this kind of evidence; it should always be received with caution, and *never* ought to be [received], *unless* the evidence is of direct declarations of that kind[ ] which *naturally calls for contradiction.*

*Levin,* 412 Pa. at 328, 194 A.2d at 421 (emphasis added).

Here, when Bowser confronted Claimant, Claimant had already learned about the positive test result. Indeed, Claimant was *not* silent about it but, instead, responded by telling Bowser that he had just discussed the matter with Employer's medical review officer *within the past half hour to an hour.*[1] Because Employer had already spoken to Claimant about the positive test result through Employer's medical review officer, I do not believe that Employer's *second* declaration concerning it naturally called for contradiction. In fact, I believe that Claimant's response to Bowser's statement, under the circumstances, was quite natural and proper.[2] Because Claimant was *not* silent but, rather,

Certainly, we expect a person to become excited and upset when confronted *unexpectedly* with an unjust accusation and to react with a firm, even emotional, denial. *Cf.* Leonard Packel and Anne Bowen Poulin, Pennsylvania Evidence § 803.2 (1987) (Excited Utterance). Here, however, Bowser's report of a positive test result, merely repeating what Claimant already had learned from the medical review officer, was not unexpected and, thus, did not naturally call for a denial.

gave an appropriate reply to Bowser, the "admission by silence" principle in *L. Washington & Associates* does not apply here.[3]

Because the record contains no competent evidence that Claimant failed the drug test, I would reverse.

v.

## CHESTER COUNTY BOARD OF ASSESSMENT APPEALS.

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1996.

Decided Jan. 6, 1997.

**3.** The majority fails to recognize the effect of Claimant's discussion of the test results with Employer's medical review officer. First, the majority inexplicably fails to accept that the medical review officer is someone who works for Employer, stating that Claimant's confrontation with Bowser was the *first* time that *Employer* discussed the matter with Claimant. (Majority op. at 419.) It is clear to me that, from Claimant's view, the medical review officer did the drug test *for Employer* and, therefore, represented Employer in providing Claimant with the test results.

Second, the majority makes much of the fact that Bowser had the power to terminate Claimant. (Majority op. at 419.) However, that does not alter the fact that Claimant had nothing to gain by denying the test results when confronted by Bowser. If Claimant admitted to Bowser that the test was correct, Bowser would fire him; if Claimant contested the test's accuracy, Bowser would not believe him over the medical review officer. Thus, I cannot say that Claimant's failure to challenge Employer's second declaration about a positive test result constitutes an "admission by silence."